IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        -v-                                        13-CR-6008 CJS

QUALITY ROOFING, INC.,

        Defendant.

---

## PLEA AGREEMENT

The defendant, QUALITY ROOFING, INC., and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to plead guilty to a 9 count Information charging violations of Title 18, United States Code, Section 1001(a)(3) (making and using a false document), for which the maximum possible sentence, as to each count, is a fine of $500,000, a mandatory $400 special assessment and a term of probation of not less than one nor more than five years. The defendant understands that the penalties set forth in this

paragraph are the maximum penalties that can be imposed by the Court at sentencing.

## II. ELEMENTS OF THE CRIME AND FACTUAL BASIS

2. The defendant understands the nature of the offenses set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

    a. the defendant knowingly and willfully,

    b. used a false document,

    c. knowing it contained a false statement,

    d. that was material, and

    e. in a matter within the executive branch of the federal government.

### FACTUAL BASIS

3. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

    a. Quality Roofing, Inc. ("QRI") is a corporation. From October 2007 to January 2008, QRI acted as a lower-tier subcontractor on a roofing project for the Kenneth B. Keating Federal Building and United States Court House in Rochester, New York (the

  "project"). The project was administered by the General Services Administration.

b. QRI was required to pay its employees the prevailing wage and fringe benefits, as established by the Secretary of Labor, for work on the project. QRI was further required to submit weekly certified payrolls for its work on the project to the General Services Administration.

c. On or about the dates listed below, defendant caused to be prepared, signed and submitted to the General Services Administration weekly certified payrolls for QRI. These certified payrolls were materially false in that each payroll materially understated the number of hours that QRI's employees actually worked, and materially overstated the hourly rate and fringe benefits actually paid to QRI's employees.

| Certified Payroll Date | Count |
| --- | --- |
| October 12, 2007 | 1 |
| October 19, 2007 | 2 |
| October 26, 2007 | 3 |
| November 2, 2007 | 4 |
| November 9, 2007 | 5 |
| November 16, 2007 | 6 |
| November 23, 2007 | 7 |
| November 30, 2007 | 8 |
| December 7, 2007 | 9 |

d. At the time, defendant knew that the weekly certified payrolls were false. Defendant was aware that QRI's employees worked more hours and were paid less wages and benefits than shown on the weekly certified payrolls.

### III.  SENTENCING GUIDELINES

4.  The government and the defendant agree that the sentence will be calculated in accordance with Chapter 8 of the Sentencing Guidelines Manual, specifically Chapter 8, Part C, thereof, which pertains to the Sentencing of Organizations.

5.  The government and the defendant agree that, pursuant to Guidelines §§ 8A1.1, 8A1.2 and 8C2.3, the base offense level is determined by reference to Guidelines §§ 2B1.1(a)(2) and 2B1.1(b)(1)(C).  The base offense level is therefore 10.

6.  The defendant and the government agree that, based on Guidelines §§ 8C2.4(a)(1) and 8C2.4(d), the base fine is $20,000.

7.  The defendant and the government agree that the culpability score is determined by Guidelines § 8C2.5, and pursuant to Guidelines § 8C2.5(a), there are 5 culpability score points.

8.  The defendant and the government agree that because the defendant had at least 10 employees and because at least one employee with substantial authority participated in, condoned, or was willfully ignorant of the offense, Guidelines § 8C2.5(b)(5) applies to the offenses of conviction and adds one (1) point to the

defendant's culpability score.

9. The defendant and the government further agree that because the defendant clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct, pursuant to Guidelines § 8C2.5(g)(3), the defendant's culpability score must be reduced by one (1) point.

10. Pursuant to Guidelines § 8C2.6, with a culpability score of 5, the minimum and maximum multipliers are 1.00 and 2.00.

11. Pursuant to Guidelines § 8C2.7(a), the minimum of the Guidelines fine range is the product of the base fine ($20,000) and the minimum multiplier (1.00). The minimum of the Guidelines fine range is therefore $20,000.

12. Pursuant to Guidelines § 8C2.7(b), the maximum of the Guidelines fine range is the product of the base fine ($20,000) and the maximum multiplier (2.00). The maximum of the Guidelines fine range is therefore $40,000.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

13. Notwithstanding the above calculations, it is the agreement of the parties pursuant to Rule 11(c)(1)(C) of the

Federal Rules of Criminal Procedure that the Court at the time of sentence impose **a fine of $75,000, and restitution of $19,197.50,** as part of the appropriate sentence in this case. If, after reviewing the presentence report, the Court rejects this agreement, the parties will be relieved of their other obligations under this agreement and the defendant shall then be afforded the opportunity to withdraw the pleas of guilty. This agreement does not affect the length and conditions of a term of probation that may be imposed by the Court at sentencing.

14. The defendant understands that except as set forth in ¶ 13, above, the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

### IV. STATUTE OF LIMITATIONS

15. In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to

assert the statute of limitations as a defense to any other criminal offense involving or related to the project described in paragraph 3 above which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

### V.  GOVERNMENT RIGHTS AND RESERVATIONS

16. The defendant understands that the government has reserved the right to:

    a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

    b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

    c. advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and fine and the method of payment; and

    d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

## VI. APPEAL RIGHTS

17. The defendant, through its representatives, understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which is consistent with the sentence set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

18. The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

19. The government waives its right to appeal any component of a sentence imposed by the Court which is consistent with the sentence set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. However, in the

event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII.  RESTITUTION PROVISIONS

20. Pursuant to Title 18, United States Code, Section 3663(a)(3), the parties agree that the Court shall require restitution in the total amount of $19,197.50 to be paid to the persons and in the amounts set forth below as part of the defendant's sentence:

| | |
|---|---|
| Charboneau, Russell | $945.91 |
| Davis, Leroy | $4,685.45 |
| Garcia, Alejandro | $2,378.79 |
| Garcia, Jose Luis | $2,180.18 |
| Garcia (Rojo), Manuel | $817.06 |
| Garcia, Omar | $3,766.90 |
| Garcia, Roberto | $2,555.18 |
| Garcia, Rolando | $1,868.03 |

21. The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a nominee or other third party. The

defendant agrees to make complete financial disclosure to the United States by causing its authorized representative to truthfully execute a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, causing authorization forms to be executed for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees that its authorized representative will discuss and answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

22. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

23. The defendant understands and agrees that the Court, at the time of sentencing, may order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

## VIII. TOTAL AGREEMENT AND AFFIRMATIONS

24. This plea agreement represents the total agreement between the defendant, QUALITY ROOFING, INC., and the government. There are no promises made by anyone other than those contained in or referenced in this agreement.

                                WILLIAM J. HOCHUL, JR.
                                United States Attorney
                                Western District of New York

                        BY:     _____
                                JOHN J. FIELD
                                Assistant U. S. Attorney

                                Dated: January 31, 2013

In my capacity as both the attorney representing QUALITY ROOFING, INC., and as QUALITY ROOFING, INC.'s attorney-in-fact, I have read this agreement, which consists of 13 pages. I agree that it represents the total agreement reached between QUALITY ROOFING, INC., and the government. No promises or representations have been made to QUALITY ROOFING, INC., other than what is contained in this agreement. QUALITY ROOFING, INC., understands all of the consequences of its pleas of guilty. QUALITY ROOFING, INC., fully agrees with the contents of this agreement. I am signing this agreement on behalf of QUALITY ROOFING, INC., voluntarily and of my own free will.

>
> /s/ JOHN FREEMAN
> JOHN FREEMAN, Esq.
> Attorney-in-fact for
> defendant QUALITY ROOFING, INC.

The defendant corporation, QUALITY ROOFING INC., by its attorney, John Freeman, Esquire, and by a vote of the Board of Directors, a copy of which resolution is attached hereto and marked Exhibit A, hereby agrees to all the terms of this agreement. Furthermore, the defendant, QUALITY ROOFING, INC., acknowledges that all the terms of this agreement, which consists

of 13 pages, have been explained to the Board of Directors.  The corporation has had a full opportunity to discuss this agreement with its attorney, John Freeman, Esq.  The corporation states that it represents the total agreement reached between itself and the government.  No promises or representations have been made to the corporation or any representative of the corporation other than what is contained in this agreement.  The corporation fully agrees with the contents of this agreement.  The corporation is signing this agreement voluntarily.

_____
QUALITY ROOFING, INC.
By:   Keisha Connelly,
      President, Quality Roofing, Inc.

Dated: January 31, 2013


_____
JOHN FREEMAN, ESQ.
Attorney for Quality Roofing, Inc.

Dated: January 31, 2013

EXHIBIT A

## MINUTES OF A MEETING
## OF THE BOARD OF DIRECTORS OF
## QUALITY ROOFING, INC.

Pursuant to adequate and legally sufficient notice, a meeting of the Board of Directors of Quality Roofing, Inc. (the "Board") was held on January 30, 2013. The following individuals, each of whom is a member of the Board and whom together constitute a quorum of the Board participated in a meeting:

Keisia Connelly
Christopher Connelly

John Freeman, Esq., counsel to Quality Roofing, Inc., also participated in the meeting.

The Board discussed the proposed negotiated resolution between Quality Roofing, Inc. and the United States Attorney for the Western District of New York and the terms and conditions therein related to the charges that arose from an investigation related to a project at the Kenneth B. Keating Federal Building and United States Courthouse in Rochester, New York.

After discussion, the Board adopted the resolutions appended hereto as Attachment 1.

Submitted:

_____
Keisia Connelly


_____
Christopher Connelly

EXHIBIT A, ATTACHMENT 1

RESOLUTIONS
ADOPTED BY THE BOARD OF DIRECTORS OF
QUALITY ROOFING, INC.
ON JANUARY 30, 2013

WHEREAS, Quality Roofing, Inc. ("QRI") has been the subject of an ongoing investigation conducted by the United States Attorney for the Western District of New York related to a project at the Kenneth B. Keating Federal Building and United States Courthouse in Rochester, New York.

WHEREAS, following extensive negotiations between counsel for QRI and counsel for the Government, a negotiated resolution has been presented to QRI for its consideration; and

WHEREAS, the Board of Directors of QRI has carefully reviewed the information provided by counsel concerning the negotiated resolution and its consequences,

IT IS NOW RESOLVED, that the Board of Directors of QRI hereby approves the negotiated resolution and accepts all potential consequences; and

IT IS NOW FURTHER RESOLVED, that the Board of Directors of QRI hereby authorizes its counsel John Freeman, Esq., and Keisia Connelly, Chief Executive Officer of QRI, to execute the terms of the negotiated resolution on behalf of QRI, and to take such other actions as may be required to execute the negotiated resolution and enter pleas as contemplated therein.